The first appeal is docket number 23-1052, ITServe Alliance v. United States. Mr. Banas, you've reserved four minutes, right? Yes, Your Honor. Okay. Please begin whenever you're ready. Thank you, Your Honors, and may it please the Court, my name is Brad Banas. I represent the appellants in this case. Congress intended to exact the enhanced border security fee on certain H-1B employers and certain applications from certain H-1B employers. It limited those to those filing applications on behalf of beneficiaries who would seek admission to the United States, not those that were already here and would not seek admission, not use the border. It's no surprise that Congress would seek to raise funds for border security from employers that used the border. And because the text structure and history enforces that and reinforces that interpretation, this Court should reverse the lower court's decision and remand it for further proceedings on damages. The text of the statutes in question here both include one key phrase. That key phrase is an application for admission. Admission is a bedrock principle in immigration law. The definition of application for admission made its first appearance in 1952 in the Immigration and Nationality Act, which the government still works off of, was implemented. Admission is the concept that someone from outside the United States appears at a port of entry, presents an application for admission, and is inspected and admitted into that status. But as I understand your argument, you yourself are not asking for a literal insertion of the statutory definition for application for admission into these public laws. Is that right? Your Honor, we are looking for credence to the definition of the word admission. Let me make sure I understand you, and you understand me. Am I being correct when I'm saying that you are not seeking a literal insertion of the statutory definition into these two public laws? I think we are, but I want to explain. Because if you are, then we are left with the temporal disconnect the Claims Court observed. Nobody is paying these filing fees or fraud fees at the time a foreign national is at a port of entry seeking to physically enter the United States. I think we agree with that, right? I agree with that, Your Honor, but that's the consequence of the agency's unlawful interpretation. I would point you to their regulation that was a final regulation in 2020 before it was set aside for procedural problems, where the agency addressing this fee specifically said the statutory text refers to, among other things, an increase in H-1B and fraud prevention detection fees. Such fees are typically collected by DHS either upon USCIS upon filing, or CBP for certain visa-exempt non-immigrants. The statutory text clearly shows that Congress intended DHS... I'm getting lost right now, because as I understood your argument in your briefing, it was an acknowledgment that a literal insertion of the statutory definition doesn't quite make sense. So the best way to deal with this uncomfortable situation is to try to think more broadly about what application for admission means into these two statutes. The way to do that is to think about application for admission to actually mean all of the elements that go into what ultimately becomes an application for admission by a foreign national, which would include the initial petition for the initial grant of an H-1B for a foreign national that is located outside of the United States that's trying to enter into the United States. Is that a correct or incorrect understanding of what you argued in your brief? I think in our brief we argued two alternatives. One was the definition of it at 1101A4, which is the definition of application for admission. We also argued for 1101A13A, which is the definition of admission. Are you saying that what I summarized is not in your briefing? I think it is, but I think both of those are in our briefing. That we suggested that the word admission, whether it's in the definition of application for admission or specifically the definition for admission, has to be given credence. And the lower court wrote that definition out of the statute. I would also point you to page 128 of the record, because I think this clarifies specifically this issue. That's going to be the part of form I-129, where the employer chooses two boxes, two different things. One is whether it's a new employment, whether it's an extension. We understand form I-129 and there's two different boxes. I don't at the moment understand how one could literally use the statutory definition and plug it into these two public laws and for it to make sense. Can you explain that? I can. When an employer files a form I-129, they check one of two boxes under question 3 of part 2 of page 2 of that form. One of them seeks an application for admission, one of them seeks a change of status. When they check the top box, the fee is not due. When they check the bottom box, the fee is due. Counsel, can I ask you a question about the 2015 law, it's public law 111-230. Why shouldn't I understand that when it says an application for admission as a non-immigrant, including an application for an extension, that that language would make it so that term, application for admission, is not as limited as you suggest? Because it also, according to the statute, using the word includes, including, an application for an extension and a person who would have an application for an extension would be somebody who would already be in the United States. The government certainly argues that and it's incorrect. Why? You can seek an extension for someone who's outside of the United States. I would point you again to page 128 of the record. The top box asks, what's the basis for your H-1B? Continuation of employment with the same employer, that would be an extension. The second part asks, do you want that person to pick up the visa outside of the country and seek admission or are they already inside of the country? You're saying because C, when it talks about extend stay, doesn't say now in the United States that I should interpret that differently? It uses the term admission. It doesn't need to say now in the United States. It actually says extend the stay of each beneficiary because the beneficiaries now holds this status. Your Honor, again, it doesn't eliminate application for admission and the extension and the requested action versus the basis for the application are two totally different things. I'm just trying to understand, like, does the person have to be in the United States or not? No, they don't. And you're saying that they should not be in the United States. The fee should be limited to somebody who's outside the United States, even if it applies to someone who's extending their stay in the United States. No, Your Honor. Let me give an example. Let's say Employer A hires a non-immigrant. They enter the United States. They stay for three years. That's the duration of the first grant for an H-1B status. At the end of those three years, they leave. They go back to their country of nationality and they maybe work for the same company, maybe work for a different company. Then Employer A wants to rehire that same employee. They would not be asking for new employment. They would not be asking for, they would be asking for an extension. That person would be outside the United States. They would check box, let's see, B on part two, question two. And they would check box A on part two, question four. And so in that way, they would seek an extension for someone outside of the country. This is a very common scenario. That there are sometimes synonymous use of admission and status in the immigration context? I'm sorry, Your Honor. Do you agree there's sometimes synonymous use of admission and status in the immigration context? No, I do not. As I teach my immigration class, status is a visa plus admission equals status. Saying status and admission are equal is like saying everyone who's driving a car has a driver's license. Well, what does it mean when the statute, the 2015 one, refers to an application for an extension of such status? How do you translate that? Such status is H-1B and an application for an extension means they're not doing a new employer. Well, what I'm asking is, is that a petition, is that an extension petition? Yes, Your Honor. Okay. So it doesn't say extension petition, it says application for an extension. Correct, Your Honor. They're not going to a new employer and they're also not changing their position in any way or the things that qualify them to be an H-1B applicant, right? That's right, Your Honor. I mean, because somebody could be working for the same company if they get a, if something changes with their position title or something like that, they might have to apply, reapply, correct? Well, yes, however, the H-1B system is a lotteried system. You have, last year, 400,000 people applied for 85,000 positions. So getting that initial cap H-1B is incredibly important. You only have to get it once. So once you get it, if you were working for- But that's not, I hear what you're saying. I don't know that that answers my question so much. I'm just trying to really wrap my head around your assertion that when it talks about including an application for an extension, that I'm supposed to understand that to only be an application for an extension for somebody who's outside the United States. Your Honor, I think it applies to both. However, the fee only applies when they're seeking, when the employer marks box A on part two, question four of the form. That indicates the employer is seeking a beneficiary so they can obtain a visa or be admitted. And your view of that is because of the words application for admission, right? Correct, Your Honor. That has not changed from 2010 to 2015. And again, if we look at the 2015 law- Well, except that now there's a statute that says an application for admission includes an application for an extension. And if you read the regulatory filings, what they said was they didn't make enough money off of just charging on new applications and changes of employer. So they wanted to make clear to the agency that they could charge it on extensions. It was, it's not a clarification, Your Honor, it's an addition. But it doesn't say charging it for extensions only where somebody is outside the United States. It doesn't have to because it says application for admission. But why would Congress care about cleaving applications for extensions into two categories? One where the extension is for someone that's already in the United States under an H-1B status. And then those that are also under an H-1B status but happen for the moment to be located outside the United States. It doesn't make any sense. Your Honor, they only ever intended to charge it to people who are outside the United States seeking admission. This isn't a cleave. The question is, you're saying that this application for an extension of such status, that only applies to extension petitions for foreign nationals that have the H-1B status that happen to be located outside the United States that are trying to physically re-enter the United States. And I'm trying to figure out why would Congress make that choice to cut up the category of people looking to do extension petitions into people that are located outside the United States and people located inside the United States. I think because they did not get rid of the words application for admission, it doesn't by adding that dependent clause, it doesn't broaden it to people inside the United States. I guess the point I'm trying to make is your position is urging an outcome that I don't see a reason for, and I'm looking for a reason. Like policy, like why would they do that? Your Honor, the legislative history is limited to one floor statement from Senator Schumer. He indicates that the whole reason for this fee is this is 2010, let's go back to 2010, the Tea Party Republicans are in, they want border security, but they don't want to pay for it. Actually, it's 2015 too. Well, it started in 2010, Your Honor, but we don't have legislative history from 2015, admittedly. Again, very limited, the lower court noted that. But what we see is Senator Schumer trying to find a way to pay for the additional enhanced border security that apparently everyone wants in 2010. And he does this by targeting H-1B folks, and he says it's intended to offset the border security costs, but we don't want to charge it to the quote good H-1B employers who hire college graduates from U.S. colleges and have them create new things and then apply for a green card for them. We want to charge on the quote bad H-1B employers, that's in Senator Schumer's eyes, that bring in cheap temporary labor and bring them in, send them out, bring them in, send them out. And so they're trying to target H-1B employers who use the border. I would also note that in the 2015, the best legislative history we have from the 2015 is that Congress in the same act, Public Law 114.113, uses the term admission, application for admission, applies for admission, applicant for admission, and the word admitted, that's 17 times between the different terms, all in reference to someone at a port of entry seeking physical entry into the United States. That's significant. And again, I'm not pointing to other uses of admission within the Immigration Nationality Act, but the actual implementing public law here. Do you have a question? I do. Given the current legal landscape, what, if anything, do you contend would be the relevance of the fact that the agency has a history of collecting increased fees on all Form I-29? Nothing. It's an illegal exaction, Your Honor. They never went engaged in notice and comment rulemaking. And so even under the prior Chevron regime, their interpretations would have carried no weight. And I don't think they carry skid more deference here because they're simply not persuasive. It's very clear when you look at the form that was in place 15 years ago when this was implemented. They ignored, they based everything in their interpretation on that top section of the form, not the second section. Congress wanted to protect the border. Can you explain that more specifically? Yes, Your Honor. Again, on page 128 of the record. And again, immigration is a form-driven practice. Immigration litigation is a sub-sub-sub specialty, which is probably why this Court doesn't hear much of it. But for employers, they look at the form. Their attorneys say, okay, is this a new employment? Then check this box in Part II. And if you notice, the agency's interpretations all relate to that Part II, Question II, whether they charge on new employment, change of employers, or extensions. It wholly ignores Part, or Question IV, where A or B is, is this seeking admission or is this a change of status? Thank you, Your Honor. Okay, we will reserve the remainder, might probably add a couple minutes, we'll see. Thank you, Your Honor. May it please the Court. The public laws at issue here authorize USCIS to collect this increased fraud fee on all the petitions, including change of status, that are otherwise subject to the fraud fee. The fraud fee is at 8 USC 1184. The United States interpretation harmonizes all the text and within context, puts everything in place and gives us sort of a symmetrical hole between the increased fraud fee and the fraud fee. Because what is clear, the purpose of this statute, the public laws at issue, is to increase that fraud, the already extant fraud fee. So getting to Your Honor's question, whether a literal insertion of the phrase application for admission can occur here, it cannot. We've demonstrated how that doesn't work. Because literally inserting the defined phrase, talking about a non-immigrant appearing at the border, leads to the result where, as Your Honor said, the fee is not paid. Because there's no dispute in this case that the process, the underlying institutional setting, is the petition process whereby the employers are actually filing the petitions on form I-129, seeking H-1B status for their non-immigrant employees. After which, then some of the non-immigrant employees can come into the country if they're outside, or non-immigrant employees specifically in change of status. So counsel, in your view, is there a way to both apply the statutory definition of application for admission while still finding in your favor? I think your answer is no, but. Our answer is no, Your Honor, because this is a scenario in which the court need not resort to the defined phrase. As we've stated in the Suwannee case, it explains this, that when use of a defined phrase leads to an incongruous or absurd result, the court need not actually apply it. What if you inserted the definition into the phrase, but then you said, it also includes these other types of, I think it's an extension, which then would make it so that it can't just be outside, you know, folks that are coming in from outside the US. Is that at all possible? From the government's perspective, Your Honor, no. Because it leads to an odd result whereby, and the court has expressed, there is no longer this line of demarcation between physical location. So if the court is to use the defined phrase, you have to include a qualifier before the first clause there. Because then we've demonstrated this, I think, on page 36 of our brief, where we've substituted those. So the statute would have to read, and this is the 2015 version, the combined filing fee and fraud and prevention detection fee required to be submitted, and here we would have to include something in connection with or corresponding with a petition involving an application for admission. That's the physical entry piece. Then the court could use it. But we're still in the sphere where we then have application doing double duty in the same sentence here. Whereas Your Honors have pointed out, in the second clause added in 2015, and I believe Appellant's counsel has conceded this, that use of application has to mean petition. So we then end up with a further incongruity where the same word in the same sentence is meaning two different things. This is the reason why the United States has said our interpretation is the best reading of this. Because what it does is it applies the fraud fee, which has already and has defined various petitions to which it applies. And so this increase to the fraud fee should apply in the same situation the fraud fee applies. Is it your view that we shouldn't be looking at the words an application for admission, stop, full stop? Instead, we should look at an application for admission is a non-immigrant under section 101, blah, blah, blah, of the Immigration Nationality Act. Like that whole phrase is something that should be considered as a whole. Yes, Your Honor, because the defined phrase doesn't work here because it's talking about the non-immigrant. As we've explained, petition and application can be used interchangeably. And as the court has already noted, in some instances, status and admission can be synonymous. So if we use these two understandings, then as Your Honor has just pointed out, that whole phrase makes logical sense. We're talking about a petition for status as an H-1B. And that, if we use that defined phrase, harmonizes the text here because what this is doing is increasing the filing fee and fraud fee required to be submitted. And that's a key phrase, required to be submitted with that petition for H-1B status. And if we go to, and it's 8 U.S.C. 1184, the fraud fee is required to be submitted in a number of scenarios. It's required to be submitted first for an initial grant of status. An initial grant of status can include a non-immigrant who is outside of the United States, as well as a non-immigrant who's going to have a change of status. Say someone who is here on a student visa or something else and then gets an initial grant of H-1B. So there's someone who's here, but this is the first time they're getting it. The fraud fee also expressly includes, under its purview of the universal petitions, the change of employer. Change of employer, then, is someone who is currently in the United States. So we see that the fraud fee itself makes no distinction between the location of the person. They can be outside or inside. If the statute here is increasing that fraud fee, it's more reasonable to say that the increased fraud fee applies to the same universal petitions. And as we've stated, Your Honors, in 2015, when Congress reauthorized this and included that additional clause that, at a minimum, clarifies and potentially expands even further. And I note for the court, we have cited that there was a proposed rulemaking that was enjoined. I have been made aware recently there is a new proposed rulemaking that was issued, and I have to cite for the court. I can give you 89 Fed Reg 48339.01. We recently learned about this, Your Honor. It was, I think, June 6th or 8th. It was issued. Where it stands after the court's recent Loper-Bright decision remains to be seen. But in there, USCIS has said that, at a minimum, that additional clause, which is talking about petitions for extensions of status, for people who are already here, it's currently only applied when that petition for an extension also includes a situation where the fraud fee would otherwise apply, a change of employer. But the proposed rulemaking is saying maybe it's broader than that. Maybe it includes all petitions. And I think this gets to Your Honor's question of, has Congress created some sort of distinction with this extension petition language, making a sort of line of demarcation here between people who are inside or out. But getting back to Your Honor's bigger point, the government's interpretation of the statute resolves that temporal disconnect that comes from the literal insertion of the phrase application for admission into the text of the statute. How do you respond to the argument that Mr. Benias is making regarding the form itself at page A128, focusing on part two of the form? Your Honor, our specific point is that the statutory text itself explains what it's supposed to apply to. Whether different boxes can be checked in the forms is just an indication of how you would actually submit the petition. You'd make the petition as the employer to get various different types of non-immigrants the status that they want. Is there a particular question the Court is focused on? I just didn't know if you wanted to give us a response to that. Because you were emphasizing. It's merely one of the procedure going through. The forms and the explanations and the instructions all explain when USCIS is applying this increased fraud fee. And it's in the same situations where the fraud fee applies. So regardless of what boxes you're checking, if the fraud fee would apply based on the boxes you've checked, then the increased fraud fee should apply as well. So there's nothing, from the government's perspective, there's nothing that sort of magical, I guess, comes out of the form itself. The form is merely USCIS implementing its understanding of the statute and when the fees apply. Isn't alleged temporal disconnect the only kind of incongruity that you're finding when we apply that definition of application for admission? So it wouldn't be your honor. Because if then the phrase application for admission is used, we have an incongruity between when the fraud fee is applied. And I'm going to focus on sort of four petitions where that applies. And then the increased fraud fee is only applying to a subset of that. So the incongruity is that we now have what is understood to be an increase of the fraud fee not applying in all the situations where the fraud fee applies. So aside from the temporal disconnect, in that neither of these fees are paid or submitted by the non-immigrant at the port of entry, we also have a scenario where Congress is now levying a fraud fee and saying we're increasing the fraud fee but only on a subset. But that subset doesn't just include, as the court has pointed out, just doesn't include people who are outside of the United States. But the extension of such status would deal with non-immigrants who are here. And there may be limited circumstances where a non-immigrant maybe have left the country and come back, an extension petition applies. But as USCIS is applying it, the extension petitions are for people who are here. So we have the temporal disconnect. It's not being collected when it's actually happening. We also have sort of a lack of harmony between the fraud fee statute itself and the increase. So a couple other points, Your Honors. There is an argument that the United States interpretation is conflating admission and status. I think for the reasons we've explained, that's not. There are some Board of Immigration Appeals cases which have said in some scenarios admission and status are the same. And I believe appellants have cited to the Eighth Circuit case. And I think this may be 757 F3880, Your Honors. In there, there's a discussion of BAA considering that an adjustment of status is sometimes considered a proxy. This seems to be the change of status petition would be somewhat analogous to that scenario. Or maybe not directly. I'm pointing it as analogous. Because it is a change of status. If that's a proxy for a readmission, I think the analysis would apply. So if the court is to determine that this case is applicable. Is it your view that for us to affirm here, we would have to, in an opinion, acknowledge or point out that Congress just made a mistake? It goofed when it used the term application for admission. When it really meant petition for H-1B status. I don't think the court would have to find that Congress goofed, Your Honor. I think the court, in interpreting the statute, if it determines that there is, as we've stated in our brief, a literal ambiguity by a literal insertion of that, would have to say that the defined phrase doesn't work here. This is a scenario where it doesn't work. And the court then resorts, not necessarily finding a goof, but resorts to other understandings of those words to resolve what is an ambiguity from a literal insertion of that term. So in direct response, Your Honor, I don't believe to affirm the trial court's determination there's no legal exaction. The court has to find that Congress goofed in this situation. And with that, Your Honors, if the court would like us to discuss, if we did file our 28-J letter, recognizing Loeb or Bright, while it was mentioned by appellants, if the court would find that there is some sort of ambiguity that hasn't been resolved, Skidmore deference may still be available. It wasn't expressly asserted in our briefing. We could certainly provide the court any additional briefing it would like. But Skidmore deference being what it is, the agency's expertise is something the court can rely on. And here, because USCIS is the one agency lawfully charged with the immigration laws, its expertise carries some weight. The court can afford it whatever weight it chooses. Skidmore is not gone. Skidmore, through US v. Meade in 2001, and in Loeb or Bright, still exists. So if the court would find an ambiguity that hasn't been resolved, Skidmore deference may be available. With that, Your Honors, if the court has any other questions, I think we've. OK. Thanks very much, Mr. Phillips. Let's give Mr. Bowneys two minutes. Thank you, Your Honor. I requested four, but I will limit it to two. You stuck it all up. So let's go ahead with two minutes. Thank you, Your Honor. As my colleague noted, the fraud fee has another statute. The fraud fee is not limited to applications for admission, period. That's a significant difference. My colleague noted that this only applies to a subset of applications where the fraud fee is applicable. And that subset is defined by Congress as an application for admission. The idea that this court would redefine 75 years of immigration law and say, admission here means status, would undermine fundamental principles of immigration law. Whether you are admitted or not dictates whether you are subject to deportability grounds at 8 U.S.C. 1227 versus inadmissibility grounds of 1182. It determines whether all sorts of immigration consequences come from this argument that admission equals status. The Board of Immigration Appeals decisions refer to it in dicta for immigrants, not non-immigrants. This idea that change of status and adjustment of status are the same benefit is completely wrong. One is controlled by 8 U.S.C. 1255A. The other is controlled by 8 U.S.C. 1258. 1258 requires admission to change your status. Again, it's like saying everyone driving a car has a driver's license. It proves too much. And finally, the most straightforward reading of this is from page 128. The regulated community in 2010 would have read this to understand that when the employers who meet certain criteria, 50 employees, 50% of which are H-1B or L-1A, choose to have the beneficiary seek admission from outside of the country, they would have to pay this fee. Because that is, in this sense, an application for admission that the employer signed. And that's what the form claims to be. So there's no problem with temporal issues because the employer pays the fee at the same time. It requests that the agency send this for an application for admission. And the agency seeks to write out the word admission to the statute. This court should not condone that tactic. Thank you, Your Honor. OK, thank you. The case is submitted.